UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JUSTICE E. AINOOSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-11478-ADB |
| | * | |
| JAMES O'GARA, SHEILA C. KELLY, | * | |
| JOANN LYNDS, KRISTY MANNION, | * | |
| THERESA SMITH, REBECCA | * | |
| LUBELCZYK, CAROL MICI | * | |
| | * | |
| Defendants. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

 Pro se Plaintiff Justice E. Ainooson ("Plaintiff" or "Ainooson"), a state inmate

incarcerated at Massachusetts Correctional Institute, Norfolk,[1] brings this action against

Department of Correction ("DOC") employees, including DOC Commissioner Carol A. Mici

("Mici"), James O'Gara ("O'Gara"), Sheila Kelly ("Kelly"), Joanne Lynds ("Lynds")

(collectively, the "DOC Defendants"), and three clinicians Kristy Mannion ("Mannion"),

Theresa Smith ("Smith"), and Dr. Rebecca Lubelczyk ("Lubelczyk") (collectively, the "Medical

---

[1] At the time the Complaint was filed, Ainooson was housed at the Massachusetts Correctional Institution in Concord, Massachusetts ("MCI Concord").  <u>See</u> [Compl. ¶ 3]; <u>see also</u> [ECF Nos. 51, 52 (indicating change of address)].

Defendants").[2]  Ainooson's Complaint, [ECF No. 1 ("Complaint") or ("Compl.")], alleges that

the DOC and Medical Defendants, both in their individual and official capacities, violated his

rights under the United States Constitution, the Americans with Disabilities Act ("ADA"), and

the Rehabilitation Act ("RA"), among others, by failing to provide him with a bottom bunk bed

and single cell in order to carry out physical therapy exercises to strengthen and decrease pain in

his degenerative right shoulder and right knee.  [Compl. ¶¶ 90–103].

Currently before the Court are motions to dismiss filed by the Medical Defendants, [ECF

No. 29], and the DOC Defendants, [ECF No. 33].  For the reasons set forth below, Medical

Defendants' motion is <u>GRANTED</u> and DOC Defendants' motion is <u>GRANTED</u> in part and

<u>DENIED</u> in part.[3]

## I.   BACKGROUND

The following relevant facts are taken primarily from the Complaint, which the Court

assumes to be true when considering a motion to dismiss.  <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766

F.3d 87, 90 (1st Cir. 2014).  The Court also draws facts from documents attached to

and incorporated by reference into the Complaint.  <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732

F.3d 77, 80 (1st Cir. 2013).

---

[2] The three clinicians are employees of the DOC's medical contract provider Wellpath LLC
("Wellpath").  [ECF No. 30 at 1].
[3] Although unclear on its face, the Court interprets the Complaint to state claims for: (1)
violations of 42 U.S.C. § 1983, based on inadequate medical care in violation of Ainooson's
Eighth Amendment rights; (2) violations of 42 U.S.C. § 1983, based on deprivations of
Ainooson's equal protection rights under the Fourteenth Amendment; (3) violations of 42 U.S.C.
§ 1983, based on retaliation against Ainooson for exercising his First Amendment rights; (4)
violations of the Americans with Disabilities Act; (5) violations of the Rehabilitation Act; (6)
conspiracy to deprive him of rights under the color of law; and (7) violations of Massachusetts
DOC regulations.

A.    **Factual Background**

Ainooson has a "degenerative and separated right shoulder." [Compl. ¶ 16]. Further, an MRI taken in 2017 revealed that, "along with having a degenerative knee and other damage," he also had a large mass "that was abnormally growing behind his kneecap." [Id. ¶ 24].[4] Sometime between 2010/2011 and 2017, Ainooson was prescribed physical therapy for his right knee and right shoulder, and "was also given stretches to do for his hips, right knee and right shoulder." See [id. ¶¶ 13–18]. Ainooson was medically restricted to "light work status, no jogging/sports, [and] no weightlifting" from January 16, 2018, until January 28, 2020. See [id.¶ 31; ECF No. 1-3 at 1–2].

On approximately May 5, 2018, Ainooson had surgery to remove the "abnormally large mass" in his right knee.[5] [Compl. ¶¶ 25–29]. After the surgery, Ainooson was "given crutches and provided with a li[gh]t[] physical therapy regimen[] to help him gain some mobility and range of motion, along with decreas[ing] the pain." [Id. ¶ 29].

During one of his post-surgery appointments, Ainooson's surgeon told him that he had "muscular atrophy within his right leg," and should have had "surgery years ago." [Compl. ¶ 31]. The surgeon prescribed a home exercise program or physical therapy regimen in addition to the existing physical therapy sessions. [Id. ¶¶ 17, 31]. The purpose of the home exercise program was to "increas[e] Ainooson's range of motion (ROM), mobility, along with [] decreas[ing] the pain and weakness." [Id. ¶ 31]. Ainooson's surgeon told him that he needed to

---

[4] Ainooson had been requesting an MRI for his right knee "throughout the years" prior to 2017. [Compl. ¶ 14].
[5] Defendants' medical provider initially denied Ainooson's doctor's recommendation for surgery, but after his doctor, Dr. Churchville, appealed, Ainooson's surgery was approved. [Compl. ¶¶ 26–28].

3

comply with the exercise program for the rest of his life "in order to obtain and maintain any mobility, ROM, to strengthen hi[s] knee and decrease pain," and that "failure to comply [would] result in regression."  [Id. ¶ 31].  In or around July 2018, Ainooson's surgeon further "prescribed bottom bunk access indefinitely."  [Id.; ECF No. 1-3 at 3].

Ainooson's physical therapy sessions seemingly ended sometime after he had surgery in 2018.  See [Compl. ¶ 32].  Because his knee issues persisted, his doctor advised him that "he must increase his physical therapy regimen[] to daily, to address his impairments."  [Id. ¶¶ 32–33].

Ainooson, however, was unable to follow his home exercise programs because of "inadequate floor space within [his] cell,"[6] unsympathetic cellmates who did not appreciate Ainooson taking up floor space, and his "extremely limited access to tier time" as result of his various activities, including morning and afternoon work detail, college classes, and religious services and programs.  [Compl. ¶¶ 34–35].

Given these limitations on Ainooson's ability to complete his physical therapy exercises three times a day,[7] Ainooson's doctor, Dr. Churchville, noted in his Provider Progress Note

---

[6] Specifically, Ainooson was:

> unable to comply with the physical therapy regimen[] within the cell with another inmate because of the inadequate floor space between two individuals living in the cell and Ainooson being 6'2'' weighing 240 plus pounds combined with the nature of the exercises and stretches that Ainooson must do, he is unable to complete them on his bunk and must utilize the floor space.

[Compl. ¶ 35].

[7] Dr. Churchville's Provider Progress Note indicates that physical therapy prescribed a home exercise program "to be performed periodically throughout the day requiring, each session 30-60 minutes at least 3 times a day."  [ECF No. 1-3 at 5].

dated September 9, 2019 that "single cell housing would satisfy the requirements of [Ainooson's] rehabilitation." [ECF No. 1-3 at 5; Compl. ¶ 35].[8]

On or around September 13, 2019, Ainooson filed an ADA accommodation form, attaching Dr. Churchville's Provider Progress Note, which Defendant Smith, the Health Service Administrator, denied, "falsely claiming" that the medical note did not support the request.[9] [Compl. ¶ 37; ECF No. 1-3 at 20]. Additionally, Ainooson asserts that Defendant Smith further lied "by claiming that she had a dialogue with [him]" and stating that he was only supposed to work out three times a week rather than on daily basis. [Compl. ¶ 37; ECF No. 1-3 at 20].

On approximately September 30, 2019, Ainooson alerted Dr. Churchville to the denial of his ADA accommodation request, and, on the same day, Dr. Churchville "put in an order for [a] single cell" so that Ainooson could comply with his physical therapy regimen. [Compl. ¶ 38; ECF No. 1-3 at 22 (single cell restriction for September 30, 2019 until March 30, 2020]. Also on September 30, Ainooson filed an appeal with Defendant O'Gara, the ADA coordinator. [Compl. ¶ 39; ECF No. 1-3 at 24]. On October 21, 2019, Defendant O'Gara granted Ainooson's ADA accommodation request for a single cell for September 30, 2019 until March 30, 2020, as recommended by Dr. Churchville.[10] [Compl. ¶¶ 39–40; ECF No. 1-3 at 22–24].

---

[8] Ainooson alleges, but Defendants dispute, that Dr. Churchville's notes stating that single "cell housing would satisfy the requirements of [Ainooson's] rehabilitation" constituted a medical order. Compare [Compl. ¶ 35], with [ECF No. 30 at 14–15; ECF No. 34 at 15].

[9] As the basis for the decision, the denial states that there was "no compelling/medical need for single cell" and that "[a]ctivities can be completed in-cell or other areas as deemed by medical." [ECF No. 1-3 at 20].

[10] For reasons unknown to the Court, Defendant O'Gara seemingly backdated the grant of the accommodation to September 30, the date Dr. Churchville issued the medical order. [ECF No. 1-3 at 23].

From November 19, 2019 until May 15, 2020, Ainooson was temporarily transferred to Rhode Island's Adult Correctional Institution Intake Service Center ("ACI").  [Compl. ¶¶ 42, 48].  There, because his medical files were not transferred, he did not obtain a single cell. [Id. ¶ 43].  He requested that his accommodation be continued at ACI, but with no success, and, consequently, his impairments regressed and he suffered increased pain as well as a decrease in ROM.  [Id. ¶¶ 43, 45; see also ECF No. 1-3 at 26].

While at ACI, in a letter dated February 20, 2020, Ainooson reached out to Defendant O'Gara and requested that his bottom bunk and single cell restriction be extended for an additional six months should he be "unable to make it back to MCI Concord for evaluation." [Compl. ¶ 44; ECF No. 1-3 at 26].  Ainooson never received a response to his request.  [Compl. ¶ 44].  Additionally, Ainooson sent letters dated March 16, 2020 and March 17, 2020 respectively, to Defendant Kelly, seeking a "60 day or 6 month extension" of the ADA accommodation[11] and to Defendant Smith, requesting a "6 month extension" of his bottom bunk and single cell orders.  [ECF No. 1-3 at 27–30].

Upon his return to MCI Concord on May 15, 2020, Ainooson was placed "on quarantine status" for fourteen days in a Special Management Unit ("SMU").  [Compl. ¶ 49].  During that time, he submitted a sick slip to reinstate his bottom bunk and single cell order, which had expired on March 30, 2020.  [Id. ¶ 50].  He also forwarded the slip to Defendant Kelly and requested the relevant ADA accommodation forms.  [Id.].

While awaiting a response from Defendant Kelly, Ainooson spoke to one of the nurses about the status of his sick slip and, after "look[ing] into it," the nurse told him that Defendants

---

[11] In the letter to Defendant Kelly, Ainooson indicates that he had previously sent her a letter on February 4, 2020, but that he had "not received a response."  [ECF No. 1-3 at 27].

Smith and Mannion were reluctant to reinstate the order because of his "history of filing complaints and grievances against staff." [Compl. ¶¶ 51–53]. The officer accompanying the nurse confirmed that most staff and officers take such complaints "personal," and admitted that he had heard "staff and officers speak[] negatively about Ainooson because of the civil actions, grievances and complaints" that he had filed. [Id. ¶ 53].

Then, on May 26, 2020, Defendant Mannion denied his request to reinstate the medical order, explaining that after he was "seen [] in [the Health Services Unit] for a sick call slip" where his "medical concerns were discussed with our Provider on site," "no treatment was recommended at this time." [ECF No. 1-3 at 31; Compl. ¶ 54]. Accordingly, his bottom bunk and single cell orders were not restored. [Compl. ¶ 54; ECF No. 1-3 at 31]. A day later, on May 27, 2020, Defendant Kelly, the ADA Coordinator, also informed him that "after consulting with Health Services it was [her] understanding that there is no longer a medical reason for a single cell," and his request was therefore denied. [ECF No. 1-3 at 36; Compl. ¶ 57]. Both determinations, Ainooson alleges, were made without any "evaluation" of his medical condition. [Compl. ¶¶ 54, 57].

On May 28, 2020, Ainooson sent Defendant Kelly a "letter/legal notice" notifying her that she had violated the ADA by denying his request. [Compl. ¶ 59; ECF No. 1-3 at 37–39]. Defendant Kelly did not respond to Ainooson's letter/legal notice. [Compl. ¶ 59].

On June 1, 2020, Ainooson sent the "ADA accommodation forms pertaining to bottom bunk and single cell accommodations" to Defendant Kelly. [Compl. ¶ 61]. Again, he never received a response. [Id. ¶ 62]. On July 1, 2020, Ainooson "forwarded appeals" to Defendant O'Gara, and on July 7, 2020, sent a supplement to his appeal. [Id. ¶¶ 63–64]. On May 26, 2021,

Defendant O'Gara responded to Ainooson's July 1, 2020 appeal, stating that because a "medical order does not exist," Ainooson's appeal was denied.  [Id. ¶¶ 65, 87].

On October 15, 2020, Ainooson filed another ADA accommodation request to Defendant Lynds, the MCI superintendent and ADA coordinator.[12]  [Compl. ¶¶ 6, 78; ECF No. 1-3 at 52]. A couple of weeks later, on October 29, 2020, Ainooson met with Defendant Lynds to discuss the accommodation request.  [Compl. ¶ 79].  During that meeting, Lynds was "confrontational and threatened to send Ainooson" to the L-units, a dormitory style unit which was, at the time, known as a Covid super-spreader unit, telling him "that'll be a good place for [him]."  [Id. ¶¶ 79–80].  Defendant Lynds further told Ainooson that she did not agree with Churchville's order and that he had to "make a choice between accessing programs, college courses, work, religious services and his limited tier time in order to tend to [his] impairments."  [Id. ¶ 81].  She suggested that she could "have Ainooson's door opened before tier time" so that he could complete his physical therapy exercises.  [Id. ¶ 83].  He explained that this would not help, given his schedule before and during tier time, and he expressed security concerns about an open cell door.  [Id.].

On November 4, 2020, Ainooson received Defendant's Lynds denial of his accommodation request, which, Ainooson alleges, falsely stated that Ainooson only had to complete his home exercise program three times a week rather than three times a day.  [Compl. ¶ 85; ECF No. 1-3 at 53–54].  On November 9, 2020, Ainooson forwarded his appeal of Lynds's denial of his request to Defendant O'Gara, but had not, at the time the Complaint was filed, received a response.  [Compl. ¶¶ 86, 88].

---

[12] Ainooson had previously sued Defendant Lynds.  [Compl. ¶ 78].

Because he has been unable to carry out his home exercises, Ainooson's right shoulder and right knee have been "becoming worse," his overall ROM has deteriorated, and the weakness in his knee and shoulder has progressed.  [Compl. ¶¶ 68–70].  Ainooson is also "in constant pain," impacting his sleep and ability to "access the yard to obtain fresh air."  [Id. ¶¶ 68–70].

### B.    Procedural History

Plaintiff Ainooson filed this action against all Defendants on July 10, 2023.  [Compl.]  The Medical Defendants filed a motion to dismiss on January 26, 2024, [ECF No. 29], and the DOC Defendants followed suit on February 12, 2024, [ECF No. 33].  Ainooson opposed the DOC Defendants' motion on April 17, 2024, [ECF No. 46], and the Medical Defendants' motion on April 26, 2024, [ECF No. 48].  Ainooson further filed a motion to amend the complaint on April 18, 2024, [ECF No. 47], which the Court denied on June 4, 2024, [ECF No. 50].

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)).  This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal

allegations (which need not be credited).'" Cardigan Mt. Sch., 787 F.3d at 84 (quoting García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted).  "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García-Catalán, 734 F.3d at 103 (internal quotations and citation omitted).  In conducting this analysis, the Court must accept all well-pleaded facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff.  U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

Moreover, the Court construes the complaint liberally because it was filed pro se.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  "However, pro se status does not insulate a party from complying with procedural and substantive law."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a pro se complaint is "appropriate when the complaint fails to suggest an actionable claim."  Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

## III.     DISCUSSION

### A.     Section 1983: Constitutional Violations

Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393–94, (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 (1979)).  Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

10

acting under color of state law." W. v. Atkins, 487 U.S. 42, 48 (1988); see also Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or laws of the United States.").[13]

Ainooson brings several constitutional claims against Defendants pursuant to 42 U.S.C. § 1983. See [Compl. ¶¶ 90–101]. He alleges that in failing to accommodate his single cell and bottom bunk requests, Defendants (i) acted with "deliberative indifference" toward his medical needs in violation of his Eighth Amendment right to be free from "cruel and unusual punishment,"[14] and (ii) deprived him of his right to equal treatment under the Fourteenth Amendment. [Id. ¶¶ 91, 95]. In addition, Ainooson asserts that Defendants violated his First Amendment rights because they refused to grant his single cell accommodation request in retaliation for his prior filing of lawsuits and grievances. See [id. ¶ 91].

---

[13] Medical Defendants assert that the statute of limitations bars § 1983 and any ADA/RA claims against them because Ainooson did not file his complaint until July 10, 2023, which is more than three years after he first learned of his alleged injury in May 2020. [ECF No. 30 at 6–7]. Although the Court agrees with Medical Defendants that both § 1983 and ADA/RA claims have a three-year statute of limitations in Massachusetts, Verrier v. Beth Israel Deaconess Hosp.-Plymouth, Inc., 706 F. Supp. 3d 142, 146 (D. Mass. 2023), and that the injury as alleged against them accrued in May 2020, under the prisoner mailbox rule, Ainooson's Complaint was timely because he seemingly deposited it in the prison's internal mail-system sometime in mid-May 2023, see [Compl. at 20 (Complaint signed on May 15, 2023); ECF No. 1-2 at 1 (civil cover sheet signed on May 14, 2023); ECF No. 1-1 at 1 (cover letter addressed to the Court signed on May 15, 2023)]; Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002) (noting that so long as the prisoner complies with the prison's procedures for sending legal mail, "the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities."). In any event, this issue is mooted by the dismissal of the claims against the Medical Defendants.

[14] Ainooson further alleges a violation of the Fourteenth Amendment in his deliberate indifference claim. [Compl. ¶ 91]. Because the Eighth Amendment is "the explicit textual source of constitutional protection" for this claim, the Fourteenth Amendment has no bearing. Cf. Graham v. Connor, 490 U.S. 386, 395 (1989).

As a preliminary matter, the Court notes that there is no vicarious liability under Section 1983.  Knox v. Mass. Dep't of Corr., No. 14-cv-12457, 2017 WL 3401443, at *15 (D. Mass. Aug. 8, 2017).  Ainooson therefore needs to plausibly allege that each Defendant's individualized conduct violated the Constitution.  Id.  Further, under Section 1983, in the absence of liability under the theory of respondeat superior, a superior may only be held liable if two conditions are met: "[F]irst, the plaintiff must show that one of the supervisor's subordinates abridged the plaintiff's constitutional rights. . . . [and] [s]econd, the plaintiff must show that the supervisor's action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference."  Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514–15 (1st Cir. 2016) (citations, quotations, and punctuation omitted); see also Knox, 2017 WL 3401443, at *15 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under Section 1983 under a theory of respondeat superior." (citing Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)).  "In other words, a supervisor's action or inaction must be a proximate cause of the constitutional violation."  Knox, 2017 WL 3401443, at *15.

To the extent that Ainooson makes Section 1983 claims against DOC Commissioner Mici, see [Compl. ¶¶ 91, 93, 95, 97, 99], there are insufficient plausible factual allegations linking her to the purported constitutional violations, and these claims against Defendant Mici are accordingly dismissed.

### 1.    Eighth Amendment

The Eighth Amendment protects prisoners from "deliberate indifference to serious medical needs," Feeney v. Corr. Med. Servs., Inc., 464 F.3d 158, 161–62 (1st Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 105–06 (1976)), meaning a violation arises when medical care is

"so inadequate as to shock the conscience," id. at 162 (quoting Torraco v. Maloney, 923 F.2d 231, 235 (1st Cir. 1991)).

To succeed on such a claim, "a plaintiff must satisfy both an objective and subjective inquiry." Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015) (quoting Leavitt v. Corr. Med. Servs., 645 F.3d 484, 497 (1st Cir. 2011)). The objective prong requires proof of a sufficiently serious medical need. See id. The need must be "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014) (en banc), cert. denied, 575 U.S. 998 (2015) (quoting Gaudreault v. Mun. of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990)). The subjective prong requires the plaintiff to show that prison officials possessed a sufficiently culpable state of mind—namely, deliberate indifference to the claimant's health or safety. Perry, 782 F.3d at 78. "For purposes of this subjective prong, deliberate indifference 'defines a narrow band of conduct' and requires evidence that the failure in treatment was purposeful." Kosilek, 774 F.3d at 83 (citation omitted). Deliberate indifference may be established by "wanton" or "reckless" actions, although recklessness is to be understood "not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable." Id.

Under this formulation, an "inadvertent failure to provide adequate medical care" does not give rise to a constitutional violation because it "cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105–06. Similarly, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court case law] be condemned as the infliction of punishment." Farmer v. Brennan, 511 U.S. 825, 838 (1994).

13

Thus, substandard treatment, "even to the point of malpractice," is not enough to show an Eighth Amendment violation.  Feeney, 464 F.3d at 162 (quoting Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981)).  This is because the Constitution "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing."  Kosilek, 774 F.3d at 82. Accordingly, when the treatment simply reflects a disagreement on the appropriate course of treatment, such a dispute may present a colorable claim of negligence, but it will fall short of alleging a constitutional violation.  Id.; see also Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987) ("Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, [the Court] will not second guess the doctors.").

The Court understands Ainooson's claim under the Eighth Amendment as follows: in refusing to medically evaluate him upon his return to MCI Concord and denying Ainooson an extension of his accommodation requests without such an evaluation, Defendants acted with deliberate indifference towards his medical needs.  Turning to the Medical Defendants first, the facts as pled, even when viewed in the light most favorable to Ainooson, do not allow for the plausible inference that "the attention [he] received [was] 'so clearly inadequate as to amount to a refusal to provide essential care.'"  Feeney, 464 F.3d at 163 (quoting Torraco, 923 F.2d at 234 (internal citation omitted)).  While Ainooson could have been evaluated, the Medical Defendants' decision not to "reflects a disagreement on the appropriate course of treatment," but does not amount to a constitutional violation.  Kosilek, 774 F.3d at 82; see also Estelle, 429 U.S. at 106 (Complaints that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

As to the DOC Defendants, the record reflects that their decision not to accommodate Ainooson's requests rested on the Medical Defendants' findings that no such accommodation was needed.  See [ECF No. 1-3 at 27–30; Compl. ¶¶ 50, 65, 78]; [ECF No. 1-3 at 31 (stating "no treatment recommended at this time"); id. at 36 (finding "no longer a medical reason for a single cell [and bottom bunk status]"); id. at 54 ("Medical opines that a single cell is not medically indicated at this time")].  Given that the Court finds that the Medical Defendants' conduct does not give rise to an Eighth Amendment claim, the conduct of the DOC Defendants similarly cannot support an Eighth Amendment claim, as they relied on the Medical Defendants to determine the need for an accommodation.  Accordingly, Ainooson's claim under the Eighth Amendment against the DOC and Medical Defendants is dismissed.

### 2.      Fourteenth Amendment: Equal Protection Clause

Ainooson further alleges that the denial of his bunk bed and single cell accommodation, in defiance of medical orders, violated the Equal Protection Clause.  [Compl. ¶¶ 97–98].  In drawing all reasonable inferences in favor of Ainooson, the Court construes this claim as follows: where "[o]ther inmates [were] provided single cell accommodation" because limited floor space prevented them from "tend[ing] to their disabilities," he was treated differently than these other similarly situated individuals in violation of the Equal Protection Clause.  [Id. ¶ 67].

The Equal Protection Clause "requires that 'all persons similarly situated . . . be treated alike.'"  Rocket Learning, Inc. v. Rivera–Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Where, as here, a non-suspect

classification is involved,[15] "a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a state purpose." Restucci v. Clarke, 669 F. Supp. 2d 150, 158 (D. Mass. 2009) (internal citation omitted).

Other than one sentence stating that other inmates were granted single cell accommodations because of their disabilities,[16] Ainooson has alleged no facts indicating that the "process by which [Defendants] decide[] which inmates would [obtain a single cell] was discriminatory, or that there was no rational basis for any difference in treatment." Restucci, 669 F. Supp. 2d at 158.  Accordingly, he has not adequately pled an equal protection violation.

### 3.    First Amendment (Retaliation)

Ainooson next alleges that Defendants refused to grant his single cell and bottom bunk accommodation request in retaliation for his prior filing of lawsuits and grievances against them, thereby violating his First Amendment rights.  [Compl. ¶ 91].

To state a First Amendment retaliation claim, Ainooson must plausibly allege that: "1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action 'but for' the prison officials' retaliatory motive." Schofield v. Clarke, 769 F. Supp. 2d 42, 47 (D. Mass. 2011).  An adverse action in the

---

[15] Courts have held that prisoners do not constitute a suspect class for purposes of equal protection claims.  See Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000); Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir. 1990).

[16] Ainooson submits an affidavit by inmate Mac Hudson, who was initially denied a single cell accommodation request despite obtaining a medical order but was granted the request on appeal. [ECF No. 1-3 at 40].  Ainooson, however, offers no further facts which would allow the Court to assess whether he was intentionally treated differently from Hudson.  [Compl. ¶ 67].

First Amendment context is one that "viewed objectively . . . would have a chilling effect on [the plaintiff's] exercise of First Amendment rights," Barton v. Clancy, 632 F.3d 9, 29, 29 n.19 (1st Cir. 2011), or that "would deter persons of 'ordinary firmness' from exercising their constitutional rights in the future."  Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009).

Because prisoner retaliation claims are "'easily fabricated[] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).  Further, "even if the [prison] officials had an impermissible reason for the action taken, they may not be held liable if they also had an independent, permissible reason for doing so." Schofield, 769 F. Supp. 2d at 47.

Ainooson presents his retaliation claims in a largely conclusory manner, indicating that his general history of bringing lawsuits/grievances against prison employees irked Defendants.[17] See, e.g., [Compl. ¶¶ 34, 36, 58, 75, 76 ("[D]efendants gave Ainooson a predetermined evaluation where Defendant Man[n]ion forward[ed] a notice to Lubelc[z]yk telling her not to renew Ainooson's single cell and bottom bunk orders"), 77, 91 ("The defendants utili[z]ed their positions and Ainooson's request for accommodations as an opportunity to abuse their authority by penalizing [him] for his past matters of successful litigation")].  Further, he seemingly suggests that the denials of his accommodation requests are per se indications of retaliation. Denial alone, however, does not give rise to a retaliation claim.  Diemond v. Mich. Dep't of Corr., No. 20-cv-00473, 2020 WL 3481540, at *5 (W.D. Mich. June 26, 2020) (deciding

---

[17] To the Court's knowledge, among the Defendants in the instant action, only DOC Defendants Smith and Lynds have previously been sued by Ainooson.  [Compl. ¶¶ 36, 78].

otherwise would give rise to a First Amendment claim "every time a prisoner request is denied"); see also Smith v. Penobscot Cnty. Jail, No. 23-cv-00314, 2023 WL 6842268, at *4 (D. Me. Oct. 17, 2023), R. & R. adopted, No. 23-cv-00314, 2024 WL 110257 (D. Me. Jan. 10, 2024) (dismissing retaliation claim because allegations regarding retaliatory animus were "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture") (quoting S.E.C. v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

That said, the filing of grievances and lawsuit "falls within the scope of protected activity under the First Amendment."  Schofield, 769 F. Supp. 2d at 47; Hannon, 645 F.3d at 48 (1st Cir. 2011) ("The plaintiff, in filing his own grievances and legal actions, plainly engaged in protected activity.").  As such, in drawing all reasonable inference in favor of Ainooson, the Court focuses on the particularized allegations of retaliation in the Complaint pertaining to: (1) Medical Defendant Mannion who, according to the information relayed to Ainooson, was hesitant to reinstate Ainooson's single cell/bottom bunk order because of his "history of filing complaints and grievances," [18] and (2) DOC Defendant Lynds who allegedly threatened Ainooson before denying his accommodation request.  [Compl. ¶¶ 53, 79–84].

Accepting that Ainooson engaged in protected conduct, the Court finds that Ainooson has plausibly alleged that the denial of a bottom bunk, which had been prescribed "indefinitely" by his surgeon, constitutes an adverse action.  Courts have also held that being "placed in a less desirable cell may be an unlawful adverse action when done in retaliation for the exercise of

---

[18] Although the same information was relayed to Ainooson about Defendant Smith, the Court finds that Ainooson has not alleged a plausible claim against her as she did not deny any of his accommodation requests upon his return to MCI Concord.  See generally [Compl.].

constitutional rights." Murphy v. Bristol Cnty. Sheriff's Off., No. 20-P-566, 2021 WL 2182831, at *4 (Mass. App. Ct. May 28, 2024) (citing Schofield, 769 F. Supp. 2d at 47).  Further, even assuming that the denial of the request does not amount to an adverse action, Defendant Lynds's threats may "constitute [a] necessary adverse action."  Dixon v. Groeger, No. 16-cv-00178, 2016 WL 4532066, at *4 (D. Me. Aug. 29, 2016), R. & R. adopted, No. 16-cv-00178, 2016 WL 5720718 (D. Me. Oct. 3, 2016) (citing Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009)).  It is plausible that the threat of being placed in a different unit, known as a super-spreader unit, [Compl. ¶ 80], would have a chilling effect on a person of ordinary firmness, deterring them from exercising their First Amendment rights.  Mattei v. Dunbar, 217 F. Supp. 3d 367, 377 (D. Mass. 2016).

Thus, assuming Ainooson has satisfied the first two prongs of a retaliation claim, the Court next considers whether he has adequately pled that Defendants Mannion and Lynds possessed the prerequisite intent to retaliate against him for engaging in protected conduct.  In the absence of direct evidence, "retaliatory intent may be inferred from the chronology of events."  Schofield, 769 F. Supp. 2d at 47.  Ainooson submitted a sick slip to reinstate his bottom bunk and single cell order sometime after May 15, 2020, [Compl. ¶¶ 49–50], and after asking a nurse to "look into" the status of his requests, he learned that Defendant Mannion had expressed disinterest in granting his request due to his history of filing grievances and lawsuits, [id. ¶¶ 51–53].  Not even two weeks later, on May 26, 2020, Defendant Mannion rejected his request.  [Id. ¶ 54].  Similarly, after the October 29, 2020 meeting with Defendant Lynds, where she threatened him, Ainooson "immediately filed a grievance" and a few days later, on November 4, 2020, Lynds rejected his accommodation request.  [Id. ¶¶ 84–85].  The quick succession of events could plausibly indicate retaliatory intent.

19

That said, the Court is not persuaded that Ainooson has adequately alleged causation for either Defendant.  Even assuming that Lynds knew about the newly lodged grievance, which Ainooson has not alleged, Ainooson's factual recitation of the October 29, 2020 meeting indicates that Lynds had discussed alternatives to the single cell request, including rearranging his tier time and keeping his "door opened before tier time" to complete his home exercises. [Compl. ¶ 83].  As to Defendant Mannion, her denial indicates that the accommodation request was denied because the "[medical] Provider on site" concluded that "[n]o treatment was recommended at this time."  [ECF No. 1-3 at 31; id. ¶ 54].  Ainooson claims that Dr. Lubelczyk made that recommendation because "Mannion . . . ordered/told" her to; however, such an allegation is entirely conclusory, and the Court accordingly disregards it.  [ECF No. 48 at 3].  In sum, both Defendants may have had "independent, permissible reason[s]" for denying his requests, Schofield, 769 F. Supp. 2d at 47, and, without more, Ainooson's claim cannot prevail, Jones v. Higgins-O'Brien, No. 16-cv-11666, 2018 WL 935421, at *8 (D. Mass. Feb. 16, 2018); Staples v. Gerry, 923 F.3d 7, 15 (1st Cir. 2019) (in order to prevail on the causation prong, plaintiff must show "a substantial or motivating factor for the adverse [action]." (quoting Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000))).  The First Amendment retaliation claim against all Defendants is consequently dismissed.

### B.    ADA (42 U.S.C. §§ 12131–12165) and RA (29 U.S.C § 794)

Ainooson claims that all Defendants violated the ADA and the RA by denying his single cell accommodation request, causing him "harm/pain" and his "disability" to regress.  [Compl. ¶ 93].  He further asserts that Defendant O'Gara violated both statutes by (i) taking nearly one year to respond to Ainooson's July 1, 2020 ADA appeal and (ii) stating "that a medical order for single cell and/or bottom bunk must exist in order to grant an ADA accommodation appeal."

[Compl. ¶¶ 101, 103].  Both statutes "proscribe discrimination in the provision of public

services."  Partelow v. Massachusetts, 442 F. Supp. 2d 41, 47 (D. Mass. 2006).  Section 794(a)

provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall,

solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance . . . ."  29 U.S.C § 794(a).  Title II of the ADA similarly provides that "no

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Although the statutes

are not identical, where, as here, "their points of departure have no bearing on the case, [] the

court will address the merits of Plaintiff's ADA and RA claims simultaneously."  Partelow, 442

F. Supp. 2d at 47.; Snell v. Neville, 998 F.3d 474, 498–99 (1st Cir. 2021); Calero-Cerezo v. U.S.

Dep't of Just., 355 F.3d 6, 11 n.1 (1st Cir. 2004) ("The same standards . . . apply to claims under

the ADA and under the Rehabilitation Act."):

>    To prevail on his claims, Ainooson must show:

>    >   "(1) that he is a qualified individual with a disability; (2) that he was . . .
>    >   excluded from participation in . . . a public entity's services, programs, or
>    >   activities or was otherwise discriminated against; and (3) that such
>    >   exclusion, denial of benefits, or discrimination was by reason of [his]
>    >   disability."

Partelow, 442 F. Supp. 2d at 47–48 (quoting Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st

Cir. 2000)); Snell, 998 F.3d at 498.

>    Under Title II, "a plaintiff can press several different types of claims of disability

discrimination."  Nunes v. Mass. Dep't of Corr., 766 F.3d 136, 144 (1st Cir. 2014); Sosa v.

Mass. Dep't of Corr., 80 F.4th 15, 30 (1st Cir. 2023).  As relevant here, a plaintiff can assert

"disparate treatment on account of disability, i.e. that the disability actually motivated the defendant's challenged [] conduct" or "claim[] that a public entity has refused to affirmatively accommodate his . . . disability where such accommodation was needed to provide meaningful access to a public service."  Nunes, 766 F.3d at 144–45 (internal quotations and citation omitted); Feeney v. Mici, No. 20-cv-10425, 2021 WL 11660406, at *8 (D. Mass. Jan. 22, 2021).

As an initial matter, the Court observes that under the ADA, a "public entity" is defined as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State . . . or local government."  42 U.S.C. § 12131(1).  While state prisons are public entities for Title II purposes, Sosa, 80 F.4th at 30, "an individual sued in his or her individual capacity is not liable under Title II," Sosa v. Mass. Dep't of Corr., No. 18-cv-12223, 2019 WL 3557701, at *3 (D. Mass. Aug. 2, 2019).  Rather, claims against individuals "must be brought in their official capacities, and only for purposes of injunctive relief."  Jones v. Higgins-O'Brien, 2018 WL 935421, at *6 (quoting Villery v. Beard, No. 15-cv-00987, 2016 WL 8730770, at *2 (E.D. Cal. Apr. 8, 2016)); Navedo v. Maloney, 172 F. Supp. 2d 276, 289 (D. Mass. 2001) ("[W]here a suit is brought against individual public officials in their official capacities, such a suit is effectively to be considered a suit against the officials' office(s).") (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) and Wang v. N. H. Bd. of Registration in Med., 55 F.3d 698 (1st Cir. 1995)).  Accordingly, the Court dismisses all ADA/RA claims against the DOC Defendants in their individual capacities with prejudice.  See Diemond v. Mich. Dep't of Corr., 2020 WL 3481540, at *8.  This leaves the claims against DOC

Defendants O'Gara, Kelly, and Lynds in their official capacities, as they relate to injunctive relief sought by Ainooson.[19] [20] [Compl. at 18].

Although the First Circuit, as far as the Court is aware, has yet to determine whether private medical contractors providing services in state prisons come under the purview of the ADA, other circuits and courts in this district have found that contractors generally do not qualify as "a public entity" under the ADA. See, e.g., Sosa, 2019 WL 3557701, at *3 (citing Matthews v. Penn. Dep't of Corr., 613 Fed. App'x. 163, 170 (3d Cir. 2015) (concluding that a private contractor providing medical care in a state prison was not a "public entity" for purposes of Title II of the ADA)); Diemond, 2020 WL 3481540, at *8. This Court accordingly follows suit, and all claims against the Medical Defendants are dismissed with prejudice.

The Court will therefore turn to the ADA and RA claims against DOC Defendants O'Gara, Kelly, and Lynds in their official capacities.

### 1. Discrimination Based on Disparate Treatment on Account of Disability

As to the first prong, the Court finds that, contrary to Defendants' contentions, see [ECF No. 30 at 10–11; ECF No. 34 at 9–10], Ainooson has plausibly alleged that he is a qualified

---

[19] DOC Defendants appear to request that the Court also dismiss the ADA/RA claims against them in their official capacities. See [ECF No. 34 at 9]. Although ADA claims are typically brought against a public entity, claims against individuals in their official capacity may be brought when seeking injunctive relief under Title II, as Ainooson does here. See Higgins-O'Brien, 2018 WL 935421, at *6; Cushing v. Packard, 30 F.4th 27, 38 (1st Cir. 2022); [Compl. at 18].

[20] Ainooson has failed to allege any facts regarding Defendant Mici's involvement with his alleged discrimination, and, as such, fails to state a claim against her. Logie v. Mass. Bay Trans. Auth., 323 F. Supp. 3d 164, 177 (D. Mass. 2018) (finding no liability for superintendent of MBTA in his official capacity when "plaintiff fail[ed] to allege sufficient facts regarding [Defendant's] involvement in any alleged discrimination").

individual with a disability given his history of knee and shoulder problems.  Ainooson alleges

that the pain "keep[s] him up at night," [Compl. ¶ 70], and impacts his sleep, which plainly

qualifies as a "major life activity," as required by the ADA.  See 42 U.S.C. § 12131(2); see

also 28 C.F.R. § 35.108(a)(1)(i), (c)(1)(i) (disability means "[a] physical or mental

impairment that substantially limits one or more of the major life activities" including

"sleeping"); see also [ECF No. 1-3 at 53 (Ainooson describing how he has problems "standing,

sitting, reaching, sleeping and caring for [himself]")].  In construing the Complaint generously,

as it must at this juncture, the Court further finds that Ainooson has, albeit narrowly, adequately

pled that he has been excluded from participating in prison programs such as the "fresh air

program" because of worsening pain. [Compl. ¶ 70]; see Shedlock v. Dep't Of Corr., 818 N.E.2d

1022, 1033 (Mass. 2004) (finding that enduring "unnecessary hardship in order to access a

program or service" may satisfy the exclusion prong of a Title II claim); Penn. Dep't of Corr. v.

Yeskey, 524 U.S. 206, 210–12 (1998) (holding that "services, programs, or activities"

in § 12132 includes recreational, medical, educational, and vocational prison programs).

That said, Ainooson's claim nonetheless fails because he has not alleged any facts

plausibly suggesting that Defendants denied him this access "by reason of [] [his] disability."

Lopes v. Beland, No. 11-cv-12063, 2014 WL 1289455, at *12 (D. Mass. Mar. 29, 2014)

(dismissing plaintiff's ADA claim because plaintiff did not offer a factual basis indicating that

removal from single cell status was on account of his mental disability).  This is fatal to his

claim.

## 2. Discrimination Based on Failure to Make a Reasonable Accommodation

Under this theory of discrimination, prisons must make reasonable accommodations "to allow the disabled person access to services or participation in programs or activities." Bibbo v. Mass. Dep't of Corr., No. 08-cv-10746, 2010 WL 2991668, at *1 (D. Mass. July 26, 2010).[21]  To state a claim, Ainooson must show that:

> (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation.

Diemond, 2020 WL 3481540, at *7.

"[A] 'reasonable accommodation' is one that gives 'meaningful access' to the program or services sought." Bibbo, 2010 WL 2991668, at *1 (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985)).  "The assessment whether a proposed accommodation is 'reasonable,' or whether it would place an undue burden on the defendant," is particularly acute in the prison context, Shedlock, 818 N.E.2d at 1033, as a court must take into account the "'reasonable requirements of effective prison administration' and the broader prison environment," Clergeau v. Mass. Dep't of Corr., No. 21-cv-10136, 2024 WL 308019, at *8 (D. Mass. Jan. 27, 2024) (quoting Shedlock, 818 N.E.2d at 1033); Sosa, 80 F.4th at 33 (highlighting security concerns as one factor in assessing feasibility of accommodation).  As a result, prison officials are neither required to "employ any and all means to make services available to persons with disabilities," Bibbo, 2010 WL 2991668, at *1, nor to "provide the plaintiffs requested accommodation so long as [they]

---

[21] Discrimination under Title II includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

provide[] some reasonable accommodation," Nunes, 766 F.3d at 146 n.9.  Notably, a "plaintiff

may bring a reasonable accommodation claim under Title II without proving [] disparate

treatment, which requires proof of intentional discrimination." Kiman v. N.H. Dep't of Corr.,

No. 01-cv-00134, 2008 WL 649128, at *2 (D.N.H. Mar. 10, 2008).

As discussed supra, Ainooson has sufficiently alleged elements (1), (2), (3) (he

repeatedly alerted Defendants to his knee and shoulder pain, underwent surgery, and as received

physical therapy); and (4) (he made numerous requests for accommodation).  The issue is

therefore whether Ainooson has adequately pled that defendants failed to make the necessary

accommodations.

In relation to the bottom bunk request, the Court finds that Ainooson, at this stage, has

adequately pled a claim under the ADA.  Given that Ainooson had a medical order in hand

prescribing "bottom bunk access indefinitely,"[22] and that easier access to his bed would have

presumably reduced stress on his knee and shoulder, facilitating pain management and better

sleep, and, therefore, access to the fresh air program, the Court does not find his accommodation

request to be unreasonable.  Further, the Court cannot conceive, and DOC Defendants do not

argue otherwise, how bottom bunk access would place an "undue burden" on them.

As to the single cell request, the Court finds that Ainooson has not plausibly alleged a

violation under the ADA.  First, no similar medical order existed after March 2020 and, second,

the DOC Defendants offered various alternatives, such as finding a location and time to exercise

outside of his cell, in an effort to accommodate Ainooson's exercise regimen.  [ECF No. 1-3 at

52, 54].  These alternatives, however, were seemingly rejected by Ainooson.  See [Compl. ¶ 83].

_____

[22] Neither set of Defendants appears to dispute or otherwise discuss this medical order.  See
generally [ECF Nos. 30, 34].

As prison officials only need to "offer some reasonable alternative," and the alternatives provided to Ainooson appear reasonable, this claim under the ADA fails.  Feeney, 2021 WL 11660406, at *9 (finding that plaintiff did not adequately explain why alternatives to his requested accommodation were insufficient and thus was unlikely to prevail under the ADA and RA).  In sum, under Title II, only claims against DOC Defendants O'Gara, Lynds, and Kelly acting in their official capacities survive.  Ainooson's legal remedy in relation to these claims is injunctive relief.

### C.    18 U.S.C. § 241 (Conspiracy Against Rights) and § 242 (Deprivation of Rights under the Color of Law).

Ainooson next alleges that Defendants' denial of his single-cell accommodation request was retaliatory and in violation of 18 U.S.C. § 241 (Conspiracy Against Rights) and § 242 (Deprivation of Rights under the Color of Law).  [Compl. ¶ 91].

As a threshold matter, § 241 and § 242 are criminal statutes, and, as a private individual, Ainooson lacks standing to "initiate a criminal prosecution in his own name."  Keenan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964); see also Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242 (the criminal analogue of 42 U.S.C. § 1983)").  Accordingly, this claim is dismissed against all Defendants.

### D.    103 CMR 761.07(10) (Correction Officers and Other Staff Shall Not Interfere with Medical Orders)

Ainooson lastly brings claims under the Massachusetts DOC regulations.  Specifically, Ainooson alleges that Defendants' refusal to comply "with the medical orders" violated 103 CMR 761.07(10), which requires correction officers and other staff to not interfere with medical

orders, and that this deprived him of his right to be free of cruel and unusual punishment under the Eighth Amendment.  [Compl. ¶¶ 97, 99].

Generally speaking, "a private cause of action cannot be inferred solely from an agency regulation."  Loffredo v. Ctr. for Addictive Behaviors, 689 N.E.2d 799, 803 (1998).  Ainooson fails "to demonstrate by reference to any authority that the violation of [103 CMR 761.07(10)] creates a private right of action" and the Court is aware of no such authority.   Hudson v. Comm'r of Corr., 707 N.E.2d 1080, 1087 n.18 (Mass. App. Ct. 1999), aff'd, 725 N.E.2d 540 (Mass. 2000).  The Court also observes that the DOC regulation at issue here does not "leave an inmate remediless."  Ferreira v. Dubois, 963 F. Supp. 1244, 1260 (D. Mass. 1996).  Rather, CMR 761.09 lays out an informal and formal complaint process, including that the "inmate may file a medical grievance with the medical providers."  103 CMR 761.09(2)(d).  The existence of such a remedy further "militates against implying the additional remedy of a private cause of action." Ferreira, 963 F. Supp. at 1260.  Ainooson's claim under 103 CMR 761.07(10) is therefore not viable.

## IV.    CONCLUSION

For the reasons set forth above, Medical Defendants' Motion, [ECF No. 29], is GRANTED and the DOC Defendants' motion, [ECF No. 33] is GRANTED in part and DENIED in part.  Specifically, Plaintiff's surviving claim is against Defendants O'Gara, Kelly, and Lynds, acting in their official capacities, for denying his bottom bunk request and for which Plaintiff seeks injunctive relief.

**SO ORDERED.**

September 30, 2024                                    /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE